The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Ms. Bedell, do you please commence your argument? Good morning. Good morning, Your Honor, and may it please the Court. Adriana Rivera for Appellant, the ESI Mail Pharmacy. We ask this Court to reverse the District Court and find that we properly remove the case under the Federal Officer Removal Statute. The ESI Mail Pharmacy's satisfy the acting under requirement for Federal Officer Removal for two primary reasons. First, ESI Mail Pharmacy's operate the Tri-Care Mail Order Pharmacy for the Department of Defense to assist it in fulfilling its statutory mandate to provide pharmacy services to military members and their families. Absent the ESI Mail Pharmacy's operating the Tri-Care Mail Order Pharmacy for the government, the Department of Defense would have to administer the mail order pharmacy itself. This fact is undisputed, and the Department of Defense has acknowledged that the government cannot provide this mail order service directly without private contractor assistance. The Department of Defense relies upon ESI Mail Pharmacy. Let me ask you one question that I had, and that is, in our Baltimore case, we said, well, that belongs in state court because it was an off-the-shelf contract, a standard kind of contract for fuel. And you say, no, this is something different. But how do we distinguish, I mean, the government contracts with hundreds of thousands of private contractors on everything under the sun. How do we distinguish those contracts which ought to be litigated under whatever contracting law in state court from those contracts where the contracting party is acting under government direction? In other words, what rule would you give us to distinguish the off-the-shelf contract with the contract that you are claiming puts your party in the acting under category? Your Honor, thank you. It's right in the standard announced in Watson, applied in Sawyer, and in BP. Basically, the way you distinguish it is when the contractor is assisting the federal government in fulfilling a basic task and does so with some subjection, guidance, and control. That is exactly the situation here. We do not sell any off-the-shelf products to the government. We don't sell any products, period. Instead, what we do is operate the Tricare mail-order pharmacy. This is a custom-designed program that the government has to provide to its military. There is no other company that runs the Tricare mail-order pharmacy. We are the ones. And it is governed by a 51-page statement of work. It's governed by Tricare statute, by Tricare regulations, by Tricare manuals. And these are not- How detailed in the contract with DOD are the requirements, the statutory, regulatory, and contractual requirements? There are probably three sets of requirements here. How detailed are those requirements, and does it matter how detailed they are? It does matter, Your Honor, how detailed they are because it goes through the whole control, subjection, guidance, and control. And in this case, they are more detailed than any other case in the case report. Basically, every single aspect of how the Tricare mail-order pharmacy runs is specifically within the statement of work, which itself incorporates the Tricare statutes, the Tricare regulations, the Tricare manuals. These are voluminous and very, very specific guidance. So they're not in the contract itself except to the extent that they're incorporated by reference? They are both, Your Honor. So both the 51-page statement of work has extremely detailed specifications, and those are even themselves supplemented by one of the most, if not the most, regulated programs that the government offers, which makes sense, Your Honor. This is a uniform program to be provided to the military and family. And the ESI mail pharmacies exercise no discretion in how to operate the Tricare mail-order pharmacy. The Department of Defense dictates the requirements. Does it make a difference if the client is a subsidiary of Blue Cross or a subsidiary rather than the contracting party itself? It makes no difference, Your Honor. One of the entities is a subsidiary of the contractor. The other is a corporate affiliate. But it makes no difference because it is undisputed that we operate the Tricare mail-order pharmacy for the government. The district court recognized that. It's in our declarations, and it is, in fact, true. We operate this program, and we operate it in compliance with all the requirements that I listed out. And the mail-order pharmacy administration... Counsel, this question probably doesn't make a difference in the outcome, but there is a party that is a direct contracting party with the Department of Defense, and I think they're a defendant as well. Maybe I'm wrong about that. I thought they were, though, and it's curious to me that they didn't undertake to remove under this provision. Just as a matter of fact, is that correct? Did they undertake to remove, or have they consented? I mean, what's the status of the direct contracting party? Yes, Your Honor. So, the direct contracting party was originally sued, and it did remove along with other defendants on other grounds, not federal officer grounds. Those grounds had been upheld and had been sufficient for dozens of cases that were transferred into the MDL. This case that was an exception was remanded. Now, the plaintiffs made a decision to amend to add our mail-order pharmacies, and when they did so, that started our ability to remove, and that's when we removed. And, of course, our co-conciliates consented along with the other plaintiffs. Okay. Let me follow up with another question. The district court ruled under the acting under requirement of the statute. As you know, there are two other requirements. Assume, hypothetically, that we agree with you on the first. Are you asking us to remand to the district court to analyze the remaining requirements, or are you asking us to rule on those and explain, you know, why, whatever your position is? Yes, Your Honor. We believe that this court can appropriately rule on all three of the requirements. It's in the record. It was briefed before the district court, and even if you look at the district court's opinion, there are parts of the opinion that, although addressing specifically acting under, do go towards the defendant's third form. And we stated in our brief, and briefed by the county as well, we believe there is sufficient information in the record, and it would be interpreted as a matter of law, and it's an over-review in any event. And so, we believe that there is, this court can rule on the second and third prongs, and remand with instructions that the case is appropriately removed on all three prongs of the federal rule. One more, and I'll try to be quiet, but on the third prong, you know, the defendant, I mean, the plaintiffs argue that, I think they're alleging that the, that your clients don't have that nexus, don't have that direct conduct provision, because what they're really claiming is that you should have recognized that the opioids are being dumped in a disproportionate amount into Arlington County, not so much that just the way you're carrying out your contract, and that that somehow doesn't, you know, doesn't satisfy that third prong. Could you respond to that, please? Yes, your honor. So, what's required is that there be some connection or association between what's alleged in the complaint and the federally directed activity. It's a low bar, and we very easily meet it. Here, what's happening is that the plaintiffs are challenging how the ESI male pharmacies administer their services. Basically, they challenge, you know, how we monitor, detect, report, fill prescriptions. All of that conduct is specifically and in great detail controlled by the contract. For example, the government tells us exactly how we're to use our data, exactly how we're to monitor prescriptions, exactly how we are to restrict controlled substances prescriptions, including opioids, if there is any concern about fraudulent or criminal diversion of opioids, which is what the county is claiming that we fail to appropriately do. And there is no de minimis threshold, but even if there were, we very easily meet that threshold. We have 29.5 percent of our male order prescription opioid claims are for all opioid prescriptions are handled. That necessarily includes the prescriptions that we handle for the TRICARE male order pharmacies. And your honors, there is, uh, you know, if, if the court were to not uphold federal officer removal in this case, it could actually do damage to an important federal program, specifically in the form of interference with the federal government's uniform operation of the national TRICARE program. The Supreme Court has emphasized that the removal statute's basic purpose is to protect the federal government from interference with the government's operation. And the federal government here, both legislative and executive branch, has decided exactly how it wants to provide a male order pharmacy benefits military. The federal government has decided to offer a uniform nationwide program. There's one nationwide contract, one set of operations manuals, one TRICARE male order pharmacy, and it achieved the department of defense's stated interest in assuring a uniform national health program for military families. And the contract and the manuals require the department of defense's use of its own formulary. That's a list of approved drugs, including opioids. It also requires specific prescriptions that are going to be monitored for potential abuse. Yet the plaintiff here is one county and it seeks to change and it seeks to halt how we, our current practices, and it seeks to impose liability for how we provide these services, which include our services to TRICARE male order pharmacy. If the state court were to order us to change our practices, that court order would apply in one county out of thousands around the country. And the federal TRICARE health program would no longer be uniformed. Now the government here has decided exactly which list of approved drugs will be on the formulary, exactly which clinical management and clinical review to impose on those drugs, for example, by authorization and quantity limits, and exactly how it wants to review data to determine potential abuse of controlled substances and what to do in the case that it does find controlled substances. But the county wants to impose its own standards for each of those plan and it seeks to change how and where all opioids appear on all formularies to dictate what it believes is the appropriate clinical management of all prescriptions and how data we collect should be used and exactly how prescriptions should be restricted. This is an obvious attempt to interfere with the federal government's operation of the TRICARE pharmacy benefit. In short, the remand order should be reversed to avoid interfering with fundamental government operations and federal interests. And I'll reserve the rest of my time for removal. All right, thank you very much. Mr. Conrad, when you're ready. May it please the court, Johan Conrad on behalf of the county of Santa Barbara, the fundamental question before this court is whether federal officer removal. So I'd like to talk a little bit about the procedural posture, which I intended to skip, but given the question that was posed, I will touch on that briefly. The four areas, number one, the factual record before the district court and the district court's reasoning regarding the arising underprong. Secondly, the question Judge Wilkinson asked a few minutes ago having to do with the fact that this is essentially a consumer product and so under this court's holding in the BP case does not qualify for federal officer removal jurisdiction. The third has to do with the nexus question, which was raised a couple of minutes ago. And the fact that Arlington County did not sue on this DOD contract, did not mention this DOD contract, this suit has nothing to do with this DOD contract. And then the fourth thing I'll talk about is just the overall purposes of federal officer removal jurisdiction and the fact that this particular case does not fit within those and there is no advantage or reason that this particular case should qualify for federal officer removal. Let me just... Mr. Conrad, I don't mean to throw you off your argument. I know you're going to get through it, but the one thing that did concern me was that opposing counsel has indicated that the 5th and 8th and 11th circuits have allowed local Blue Cross entities to remove under the federal officer statute and so they say there's a in these sorts of circumstances and in fact it involved local Blue Cross entities. So would we be cutting against the grain of those various circuits if we were to rule in your favor? No, Judge Wilkinson, you would not. So each of those cases arises in the exact same and very involves a Blue Cross entity that is acting on behalf of the Office of Personnel Management and standing in the shoes of the Office of Personnel Management to bring subrogation actions to recover monies, the monies to be placed within the federal treasury. And so what you have in each of those cases is a situation where the Office of Personnel Management has paid out federal government funds to beneficiaries of federal health care plans. Those beneficiaries have then filed personal injury actions or and have had recoveries. And so in each of those cases, the question is, or the dispute involves... Was there a contract with the Office of Personnel Management? There's a service agreement between the Office of Personnel Management and Blue Cross Blue Shield. So there was a contractual arrangement? It is, Your Honor. Why is there necessarily a distinction here? It seems to me that well, I'm concerned because I think this is a very important federal program and dealing with nothing less than being able to fulfill prescriptions for service members. And so we're talking about the health of our military forces. And that would seem to me, why doesn't that just go to the heart of federal operations? Well, there are several distinguishing circumstances here, Judge Wilkinson. Number one, as I mentioned before, each of those suits that we're talking about, each of those cases that come from the other jurisdictions, each of them is actually a lawsuit that directly addresses the question of whether or not the funds will be available to be placed directly into the federal treasury. So each of those suits involves a very specific attempt to bring money into the federal treasury and an attempt to thwart money from going into the standing clearly as an agent. And, Your Honor, this gets a little bit more to the nexus question than it does to the arising under question because the nexus in those cases is on all four. And so here... Let me ask you, if I understand your claim clearly in this case, as I understand it, you're not claiming any problem with prescribing an opioid. I gather you're claiming that the prescribing opioids in numbers or excess where they're being reused improperly in the community is the problem, not containing, not monitoring the prescriptions well enough. Is that what I know? If that's so, it seems to me then we should not be focusing on the fact that the opioid is just an across the counter item like the gasoline was in the BP case, but rather it's focusing on the lack of monitoring which or the lack of care in dispensing opioids. And in that regard, aren't the two pharma subsidiaries in this case really dispensing opioids under controls specified by the federal government in the master contract? They're not, Your Honor. And I think that's a factual question that you can answer simply by looking at the actual contract here. And we've identified... You're also talking about the working agreement too, right? The working... Statement of work. Yes, sir. Statement of work, right. That's right. So if you look, it's a joint appendix, starts at joint appendix 638, which is the mail order pharmacy portion of the statement of work. And so 638, it's the bottom of 638 and the top of 639 is the joint appendix. And with respect to the mail order pharmacy, the statement of work says, for all medications, and this is at the very second sentence, for all medications dispensed through PMOP, which is the mail order pharmacy, the contractors, and by the way, the contractor here, and we haven't gotten to this yet, is not either one of these removing defendants. The contract... It's the parent. That's exactly right. The contractors tracking and dispensing procedures shall comply with federal and state law and all applicable state board of pharmacy requirements. So if we back up... But this is not just a compliance question, because I think Watson makes the point that if it's just a compliance question with federal regs, that's not enough. But doesn't a contractual arrangement differ from a suit that sues an entity for a failure to comply with a federal regulation or whatever? I mean, this isn't just a matter of compliance. It's a matter of contract, which seems to me very different if the contract specs are quite detailed as they appear to be, and the contract gives the federal government an awful lot of authority, even to the extent of altering its terms, and it gives it auditing authority. And I'm just wondering if a suit for noncompliance with some arguable federal regulation isn't very different from what we have here. Judge Wilkinson, let me answer that in two parts, because I think you're both right, but I think that it's not quite capturing the full picture here. So first of all, you're correct that unlike in Watson, in which we're dealing with tobacco regulations and not a contractual relationship, we are dealing with some species of a relationship here. We argue, and Judge Stringa found, that the contractual relationship wasn't close enough between the federal government and these appellants. But I think there's an even perhaps more on-point response to the question that you just asked than that one, and that is to focus back on what is the point of federal officer removal jurisdiction. And remember in Watson, the Supreme Court talks about the history of federal officer removal jurisdiction and says, for example, you have a situation in 1920, the Maryland v. Soper case, where the chauffeur for some bootlegger federal agents, a state court tried to try the chauffeur. And the Supreme Court said, no, you can't do that, because that's the state court trying to interfere with federal law and federal agents trying to carry out their duties under federal law. So really what we care about when we're talking about federal officer removal is protecting the immunity of the federal officers and those who are essentially standing in the shoes of the federal, such as the chauffeur. Now, let's go to the language I just read to you in the statement of work at 639 of the joint appendix. This particular statement of work specifically said that the parties, the private contracting parties under this particular contract are going to remain or need to remain in compliance with state law and all applicable board of pharmacy requirements. So the case, first of all, and then to get back to the lawsuit that Arlington filed, the lawsuit that Arlington filed isn't suing these folks for anything that they did under this contract. It doesn't have anything technically to do with the contract. Well, how can you say that? I mean, you're not pointing to, you're not saying they breached the details of it, but it seems to me what you're arguing that in the context of carrying out their contractual responsibilities here, that you want them to have done something that they have not done. So it seems like you're in effect saying that even though the contract says you have requirements one through a bunch, whatever the number is under this statement of work, we want there to be another one, which is you have to have this special attention to potential dumping of opioids. I get that it's not a breach of the contract, but under the nexus issue, it seems like it relates to it. I have a hard time understanding how it doesn't relate to it. Your Honor, our lawsuit says that a number of defendants, including these two, and with respect to these two appellants who are mail-order pharmacies in connection with their mail-order pharmacy duties, have flooded Arlington County, flooded the country, frankly. The numbers are somewhere in the neighborhood. These two appellants, 19 billion MMEs across the country of opioids during a particular period of time, and have flooded Arlington County with opioids, caused lots of damage, and in doing so, have not complied with their obligations for particular suspicious order monitoring and things of that nature, which include state board of pharmacy requirements, which would include state law. And so there's nothing in our lawsuit that says you did or did not appropriately comply with this particular contract. This contract, according to these defendants, happens to be a way in which some residents of Arlington County. Counsel, aren't you just making their argument for them right there? It looks to me like you're complaining that they didn't comply with state law or state pharmacy requirements, but that's exactly what the contract says they must do. It seems to me like you're actually making their point that by not complying with those requirements, there is a provision. Now, don't get me wrong. I'm not, what you said about flooding the market, I'm not trying to minimize any of that. I'm not talking about the merits in any way, shape, or form. I just don't understand how, you know, quite frankly, using the provision you're talking about doesn't almost ensure that it is at least meeting the third prong of the test. Maybe I'm misunderstanding you, but that's how it appears to me. Well, Your Honor, I think what you're doing is there's a problem if you conflate federal officer removal purely with the terms of a contract and assume that if there's a contract issue with the federal government that, therefore, federal officer removal must apply. You can't reach that conclusion when the point of federal officer removal is to preserve federal immunity. And here you've got a contract that says, not only are we not concerned about federal immunity from state actions, we specifically say the state law still applies. It seems to me in the contract, there are independent requirements that the federal government imposes. I'm just looking at page 654, which relates to prescription monitoring initiatives. That type of regulation throughout the document, the statement of work, seems to me that the government wants a certain level of compliance also. And that in order to satisfy the government standard, there's some auditing that is authorized and that's independent of the state. I mean, the federal government doesn't suggest that the state law ought not be complied with. It actually requires it. But the federal government has its own standards that are imposed on the pharmacies and are part of the TRICARE program. My question is, why isn't that more than just compliance with state law? Well, two issues, Your Honor. Number one, it's important to remember who these appellants are. And these appellants are the mail-order pharmacies who, by their own evidence, are in charge of just taking care of the mail-order portions of this particular. Well, in that regard, that's a big point you make. And it might be very legitimate. And I'm very interested in it. Your argument, I gather, is that Express Scripts Inc. is the contracting party. And that the subsidiaries, or the affiliate, one's affiliate, one's a subsidiary, that they're subcontractors of Inc. And the two pharmas are really working for Inc. and not the federal government. But explain to me what the nature of the relationship between Inc. and the two pharmas is. Is there a contractual relationship there? Are they directed to comply with the government contract? How's that factually set forth? Well, I'll give you that explanation, Judge Niemeyer, in one second. I just want to close the loop. The part that you just referred to a second ago about the order monitoring program, I remember the page, I think it's page 659 of the Joint Appendix off the top of my head. That is not a piece that appears within the mail order. So it is a, that is, it's a critical distinction for purposes of your specific question about that particular section of the file. You mean the prescription of monitoring requirements in the statement of work do not apply to the pharmas? Well, Your Honor, let me answer your second question to answer that one. Okay, yeah. The contractor here is Express Scripts, Inc. Express Scripts, Inc. is a defendant, and they did originally remove this case at a time when neither one of the two appellants were a party to this case. They did not raise federal officer removal. They raised other bases. Judge Trengut rejected those other bases and remanded the case. The case was then amended after remand while it was in state court. These two appellants were added as defendants because they had- When I'm listening to all of this, I'm wondering if we rule in your favor, whether that isn't an extremely broad ruling. And I'm thinking, for example, of military contracts and procurement contracts for certain forms of weapons are very, very complicated and advance aircraft, submarines, different parts that go into sophisticated military equipment. And if we rule in your favor, and I can see a lot of state court suits being brought, mainly the kind of suits that were present before the Supreme Court in Boyle, that the design of these military aircraft, and they said it was defective and that this part was left out. And as a result, there were serious accidents to military personnel. And I can imagine all kinds of tort suits being brought. And under your view, the fact that the contract with the military contractor contained all kinds of specifications about how these weapons should be designed and this suit deals with the pharmaceutical health of the military, the suit in Boyle and others deal with the proper equipment of the military. And you can bring these kinds of suits against all kinds of military programs. And if they were litigated in state court, there's much greater danger of chaotic rulings and disparate rulings and requirements and this and that. And I realize that federal courts are no guarantee of perfect uniformity. We have circuit splits and the like. But they do provide a greater degree of uniformity. And isn't that terribly important where we have a federal interest unquestionably, which is the United And we are in danger of pulverizing and parochializing a very significant federal interest. And that really concerns me greatly. Your Honor, my time has expired. But could I have a second to respond to that question? You certainly may. Thank you. So what you're referring to with Boyle and some of those other cases is the government, obviously the government contractor defense. The existence of a federal defense is one of the three prongs of removal. So the government contractor defense here, Boyle's concern that you've raised is one of the three prongs. And so far, frankly, in this argument, we haven't even touched on that particular prong. Well, but I'm just pointing out the similarity because in both cases, you're dealing with military contractors and the Supreme Court in Boyle was very concerned with the military contractor defense as providing a guarantee against important federal programs and activities being chewed up by a proliferation of state court litigation. And I simply am suggesting that there is a very strong federal interest concerned where we're dealing with the United States military. I agree, Your Honor. And I would just suggest that we're not chipping away at the government contractor defense here. In fact, what we're mainly focused on are the other two elements here, which are the contract and the nuisances. Well, but they're all tied together. And it seems to me that they're all interrelated and aimed to the same end, which is to sweep matters of vital military, federal and military interest, have them in federal court. There's a match between a strong federal interest and a strong military interest and a federal tribunal to decide questions regarding it. Right. And that's all I'm saying is that I think that Boyle and the kind of considerations that underlie it are one of the factors and an important one that feed into this kind of case. But at any rate, your time has expired. But if you have some brief concluding statement, I'd be happy to hear it. Sure, Your Honor. Thank you. And I would just say that when you're dealing with a case like Sawyer with the naval warship or some of the other cases that involve the manufacture of equipment and things like that, where we're talking about the actual contractor, we're talking about circumstances in all fours with the lawsuit that federal officer removal is appropriate. And here, we're not talking about the actual contractor. We're not talking about a lawsuit that is on all fours with the point of the contract. And we're not talking about the concern of protecting the immunity of a federal officer. I do have one question, if I could, before we close out. Yes. You didn't really get to my question earlier. But my question is, does this doctrine apply to subcontractors when the subcontractor is an agent of the government contractor? Let's assume that the farmers in this case are agents of Inc., of the parent. The parent has contact with the federal government. The subcontractors are working with the contractor, but the subcontractors don't have direct contact with the government. Is that still permissible removal in that circumstance? Your Honor, I think that's obviously a highly fact-specific question, but I don't think... No, it's the thing the court relied on in this case. In other words, the court focused on Inc.'s relationship and said the subs didn't have a relationship with the government, but the subs were an agency relationship. They were subcontractors to Inc., to the parent. And so the question is, does that make a difference? I think it does make a difference, Your Honor. And I think when you're completely removed from the... Well, they're not completely removed. They're working through the parent. In other words, the question is, can we use, treat the subcontractors who are agents of the contractor, can we treat those as persons dealing with the government? I don't think that they should be treated under the circumstances where they do not have themselves a direct relationship. Well, why would that be? I mean, as Judge Quattlebaum mentioned earlier, the question is related to, and the subs would still have related to. But what I would suggest to you is that it is natural in any kind of federal contracting relationship here that you would expect subcontractors and subsidiaries to play some sort of role in implementing the contract. Because these federal contractors, you may have one general contractor with the federal government, but you also inevitably have, because there are many pieces to the federal contract, and you also inevitably have subsidiaries and subcontractors helping to execute. And as I understand it, that the subsidiaries are still bound by the contract between DOD and Inc. and the parent. And my guess is that they are subject to audit, and that they are absolutely, I think anybody that, I think that these subsidiaries are in fact audited in this case, and they are required to follow the same specs that the parent has. So I'm not sure, and I think it's a very good question because the district court relied upon that, but I'm not sure that it makes a difference here in terms of the reality of the federal interest. You certainly have circumstances where they're disclosed subcontractors and where there is more of a direct relationship. Here, these two appellants were not mentioned or referenced in any way in the contractor's statement of work. The only reference is there is one line that says the contractor and subcontractor's parent, if any, there is no recognition of these particular subcontractors. Let me ask you, does that make a difference when the contractor, let's say the contractor just hires an additional employee who's fully in charge of carrying out the program. In other words, if these subsidiaries are agents of the contractor and carrying out the statement of work, you would expect to treat them as a group, and there's no special need to observe corporate differences, is there? I think there is, Your Honor. I mean, I think- Okay, well, I want to know what, that's what I want to know. Does the case law support you on that? Your Honor, there is the, we have not located a specific case that deals with that question on all fours. And if you read Judge Stringer's opinion, he goes through the case law and basically says, I think that there are circumstances where you don't have to have technically a direct contractual relationship, but you definitely have to have a direct relationship where the federal government officer is directly interacting with you and directly mandating the activities. And one example- I gather in deciding this case, that's really where we have to focus, isn't it? And if I could just ask one question on that point, what is your best case for the absence of having a direct contract relationship? I think you said there's nothing on all fours. If we were to go to look to your best case on the importance of these defendants not being the direct contracting party, what would that case be? I think that the case that Judge Stringer looked at a lot, which was the Mays case out of the Sixth Circuit and involved Michigan- Yeah, I'm familiar with the Mays case. I don't mean to cut you off, but I'm familiar with that one. And we can look at it. And I'm sorry to ask a question and then interrupt you, but I'm familiar with that case. So thank you very much. Understood. All right. Thank you, Mr. Conrad. And Ms. Bedell, you have some rebuttal time. Yes. Thank you, Your Honor. So there is no requirement to see one of the contracts that has never been part of the standard. There is no requirement for there to be a contract- Well, let's focus on the question that I just asked Mr. Conrad, which is we have two subs which were moving parties. And the subs claim they're acting under a federal officer. The first prompt, not related to, acting under. Is it sufficient that they are acting under a federal officer through a parent corporation? Yes, Your Honor. It is sufficient- Okay. And what's the best case we can look at for that? Well, Your Honor, there's a few. So specifically, if you look at Durang, which is the Fifth Circuit case, Durang v. Crane Company, there the Fifth Circuit held that you didn't need to have direct oversight of specific acts giving rise to the plaintiff's complaint, the allegations in a plaintiff's complaint to satisfy acting under. And it's often been recognized, and there are many cases where the courts recognize, including this court, recognize the ability of a subcontractor to raise federal defenses. And as the court in Boyle said, it is an important central purpose is for federal defenses to be heard in federal forums when there are specific federal interests involved. And here there is no question that this is one of the quintessential federal interests the government has. It's providing mail-order pharmacy services to the military. And here it's very simple, Your Honor, because there is no question that we have stepped into the shoes of the Department of Defense, and we administer the Tri-Federal Mail-Order. I understand that. I'm getting more particular. I'm getting with respect to the subsidiaries. I'm calling them both subsidiaries, the two pharmacies. But just for, but the parent is the contracting party, and the two subsidiaries are retained as agents to carry it out. And my question is, in that context, the subsidiaries do not have direct control or contract. The government is not looking over their shoulders. The contract is looking to the parent to make sure it's carried out, and they do meet regularly to see whether it's being carried out. So the question is, but really the one the district court focused on is, does that make a difference in the analysis of section 1442? And it does not, Your Honor, and there is no case that says that it does, because you go back to the fundamental standard that was announced in Watson and applied by this court employer, MVP. Namely, does the contractor assist the federal government in carrying out a basic function, and does it do so with some subjection, guidance, and control? Absolutely, it does here, Your Honor. We step into the shoes of the government. No other pharmacy runs this. We are the licensed pharmacy. I know, but you avoid the question by using we. No, Your Honor, I mean, we, Your Honor, are the mail order pharmacy. Okay. You know, specifically, Your Honor, we are the licensed pharmacy. So our affiliate, Express Script Inc., is not a pharmacy. We are pharmacies. And it is obvious that the government relies on us to carry out the obligations of a pharmacy. And it does so, Your Honor. It specifically controls us both through provisions in the contract where it says it anticipates the use of contractors, subcontractors, consultants, staff, agents. To Judge Wilkinson's point, it is obvious that the government knows that it has to rely on other agents to carry out this obligation. And it does. Ms. Bedell, just to close this loop, and I think Judge Niemeyer asked you for case law, and you referred to a Fifth Circuit case that says something along the lines of direct oversight is not required. I may have misunderstood that a little bit. But it sounds like there also, just like Mr. Conrad said, there wasn't a direct case saying non-contracting parties excludes them from use of the removal statute. Is it fair to say that there's not a case that directly addresses that proposition in your favor as well? Well, Your Honor, there is the case that actually the district court relied on, which is Padilla, a Western District of New York case, where the contractors did remove. And the court found dispositive the fact that a federal officer broke the standard operating procedures that were applied. It also found through jurisdictional discovery dispositive the fact that there was an email between that federal officer saying, essentially, that all issues related to operations of power would go through that federal officer. That's exactly what we have here. In fact, we have a thousand times more here. We have not just one standard operating procedure, but thousands upon thousands of pages of how we operate. You're not at liberty to vary from any of those. We are not, Your Honor. You're audited, are you not? We are, Your Honor, and that's stated in our declaration. And in fact, the contract says that the government has the right to audit both on subcontractor premises or anywhere where the operations of this contract are performed. The government absolutely anticipated that there would be work done by others, not just the named contractor. And it absolutely knows that the ESIML Pharmacy... Well, I mean, it would be an odd state of affairs if the contractor was not free to vary or deviate in any way from the voluminous regulatory and statutory contractual requirement. But hey, the subsidiaries and the subcontractors were free to go their own way. The value of the whole point of the contract would have been undermined. The value of the contract from the standpoint of the government would be nullified, and you'd have a subsidiary acting in violation of the contractual requirements. And there wouldn't be anything that the federal government could do about it as far as the federal officer removal statute is concerned, and all that the subsidiary... But it just doesn't seem to me realistic to cut off and bifurcate the primary contracting party, Inc., from the subsidiaries when they're all part of the same contractual purpose. They're all subject to the same regulations. They're all after the same end. They're subject to the same requirements. They're audited, and they sort of treat them differently for jurisdictional purposes is to sort of carve up the federal interest into two. Do you see what I'm saying? Yes, Your Honor, and I realize that my time is out. Judge Niemeyer, do you have some further questions? No, I'm fine. Thank you. Judge Quattlebaum? I have no more questions. Thank you both. All right. Thanks to you both, and I'll ask the courtroom deputy to adjourn court for five... Recess court for five minutes until we're able to gather together in confluence. You know, if I were coming down from the bench, shaking your hands, I'd tell you you both did a great job today. Thank you. And that goes for me as well. Thank you both. Thank you, Your Honor. Thank you, Your Honor. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.